**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

IN RE: AMANDA ALEXX GIOVANNI,      )
        **Debtor.**      )
_____)
                               )
**AMANDA ALEXX GIOVANNI,**      )
                               )
        **Appellant,**      )
                               )
          **v.**      )        **Case No. 1:05cv10**
                               )
**GRAYSON, KUBLI & HOFFMAN, P.C.,**      )
                               )
        **Appellee.**      )

### MEMORANDUM OPINION

        In this bankruptcy appeal, appellant/debtor Amanda Alexx Giovanni appeals the

bankruptcy court's conclusion that her debt to appellee/creditor Grayson, Kubli & Hoffman, P.C.

("Grayson Kubli"), her former counsel, was obtained by false representations unrelated to her

financial condition and is therefore non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

Specifically in issue here are whether the bankruptcy court properly determined (i) that Grayson

Kubli's reliance on Giovanni's non-financial false representations was justifiable, and (ii) that

the entirety of Giovanni's debt is non-dischargeable.

### I.[1]

        In November 2001, appellant Giovanni was sued in the Circuit Court for the City of

Alexandria, Virginia by Andrulis Corp., her former employer.[2]  The central factual allegations of

Andrulis' bill of complaint were that while in Andrulis' employ, Giovanni induced Andrulis to

---

[1] The facts recited here are derived from the bankruptcy court record and are undisputed.

[2] *See Andrulis Corp. v. Giovanni*, Chancery No. 011788 (Alexandria Cir. Ct. 2001).

engage the services of "The Computer Tutor,"[3] a fictitious employment agency secretly operated

by Giovanni herself, and that as a result of that engagement, Giovanni wrongfully received

nearly $28,000 in referral fees from Andrulis.  On the basis of these allegations, Andrulis

asserted claims of breach of contract, breach of fiduciary duty, fraud, and conversion against

Giovanni, and sought recovery of the referral fees and $100,000 in punitive damages.

In December 2001, within a few weeks of being served with Andrulis' bill of complaint,

Giovanni met with attorneys from appellee Grayson Kubli, a McLean, Virginia law firm, to

request that Grayson Kubli defend her against the Andrulis lawsuit.  To encourage the law firm

to take her case, Giovanni informed the attorneys that Andrulis' allegations had no basis in fact.[4]

As Giovanni explained it, The Computer Tutor was owned and operated by Keith Francis, and it

was Francis, not she, that had received the referral fees that Andrulis claimed.  When informed

that her defense would likely cost in excess of $25,000 per month, and that a trial would likely

cost $100,000 by itself, Giovanni told the law firm that she was financially well-prepared to pay

Grayson Kubli's fees, with an annual income in excess of $300,000 and more than $150,000

available in cash.  Giovanni further explained that defending her name and reputation was a

matter of principle, and that she was accordingly prepared to spend far more on her defense than

was in controversy in the lawsuit.

In reliance on these and other statements, Grayson Kubli agreed to represent Giovanni

against Andrulis.  Before entering an appearance on Giovanni's behalf, however, the law firm

---

[3] The record reflects that The Computer Tutor also operated under the name "360."

[4] Giovanni also told Grayson Kubli that Andrulis had filed suit purely to dissuade
Giovanni from bringing a *qui tam* action against Andrulis under the federal False Claims Act, 31
U.S.C. § 3729-3733.

made inquiries into the merits of Andrulis' allegations.  Prompting this investigation was the fact that documents attached to Andrulis' pleadings established that Andrulis' referral-fee checks had been deposited in a bank account belonging to Giovanni.  When questioned about this fact, Giovanni explained that the checks had been deposited in her account to accommodate Francis, whose company had dissolved and no longer had accounts of its own.  After verifying this explanation with a local attorney who had assisted Francis in collecting payment from Andrulis,[5] Grayson Kubli was satisfied that Giovanni's claims were valid, and went forward with her defense, filing, *inter alia*, a cross-bill of complaint against Andrulis in January 2002.

To formalize the representation, Giovanni and Grayson Kubli entered into a retainer agreement providing that the law firm's work on Giovanni's defense would be compensated on an hourly-fee basis.[6]  In keeping with this agreement, Giovanni paid Grayson Kubli a $10,000 retainer near the outset of the representation.  Despite receiving monthly bills for mounting legal fees, however, Giovanni never made any further payment to Grayson Kubli.  By mid-May 2002, Giovanni's arrearages in legal fees had grown to approximately $150,000, and Grayson Kubli informed her that it would not continue to represent her unless she paid her bill immediately.  In response, Giovanni, via e-mail, sent the firm a detailed plan for paying her bills that involved liquidating certain parcels of property.  Although this reassurance temporarily placated Grayson

---

[5] Grayson Kubli obtained an affidavit from the attorney attesting to Giovanni's version of events regarding the referral fees.

[6] Giovanni and Grayson Kubli initially reached an oral retainer agreement in December 2001 and later executed the written agreement.  The parties also entered into a second retainer agreement providing for representation in a federal *qui tam* action against Andrulis, but the second agreement provided for a contingent rather than an hourly fee, and thus did not give rise to any debt.  Accordingly, only the retainer agreement governing Giovanni's defense against Andrulis is relevant to the bankruptcy appeal at bar.

Kubli, and forestalled its contemplated motion to withdraw, Giovanni's plan was bogus: She did not even own three of the five parcels that she claimed to be prepared to sell to satisfy the legal fees she owed.  Yet, Grayson Kubli did not attempt to verify the information that Giovanni provided, and thus did not immediately discover that the plan was bogus and that she had misrepresented her ability to pay.

A few days after receiving Giovanni's payment plan, Grayson Kubli arranged a meeting with Giovanni to discuss a different problem that had surfaced.  Some weeks before, through a subpoena served on America Online, the law firm had discovered that a series of e-mail messages it had received from "Keith Francis" — messages indicating that Francis would corroborate Giovanni's story concerning The Computer Tutor's referral fees — had been sent from an e-mail account belonging to Giovanni herself.  Confronted with this fact, Giovanni admitted to having sent the messages and confessed that she had lied from the outset about not having receiving the referral fees.  Giovanni contended, however, that she nonetheless possessed a defense against Andrulis' claims.  In Giovanni's new version of events, Andrulis had been aware of and had consented to her receipt of the referral fees, but preferred to record them as paid to The Computer Tutor, a non-employee, in order to claim them as reimbursable expenses under one of its government contracts.  Without mentioning this new explanation — which also turned out to be false — the firm informed Giovanni via e-mail after the meeting that it would continue to represent her if she followed through on her plan to pay her overdue bills.

Within a few weeks, when it became apparent that no further payment was forthcoming, Grayson Kubli notified Giovanni that it would file a motion to withdraw as her counsel of record in the Andrulis lawsuit.  Giovanni told the firm that she would not contest the motion, and

Grayson Kubli, accordingly, did not assert Giovanni's lies about the referral fees or her phony e-mail messages as grounds for withdrawal.[7]  Giovanni subsequently changed her mind, however, and filed an *ex parte* opposition to the motion.  As a result, the motion was denied, and the law firm was then obligated to continue with the case through trial.  The matter went to trial at the end of August 2002, and two weeks later the chancellor entered judgment for Andrulis, awarding it $27,675 in compensatory damages and $10,000 in punitive damages.[8]  By then, Giovanni's unpaid attorneys' fees had risen to approximately $400,000.

In early 2003, having received no payment for its work on Giovanni's case beyond the $10,000 retainer, Grayson Kubli sued Giovanni in the Circuit Court of Fairfax County, Virginia to recover the balance of its unpaid legal fees and costs.[9]  The state court thereafter referred the dispute to arbitration.  In arbitration, Grayson Kubli asserted five claims against Giovanni: (i) breach of contract; (ii) unjust enrichment; (iii) open account; (iv) fraudulent inducement; and (v) fraud.  The arbitrator held hearings on these claims in May and June 2003, with both Giovanni and Grayson Kubli represented by counsel.  In August 2003, the arbitrator issued written findings of fact and conclusions of law, finding, *inter alia*:

(i)     that to induce Grayson Kubli to represent her, Giovanni made numerous false representations concerning (a) her ability to pay the law firm's fees and (b) the merits of Andrulis' allegations;

(ii)    that to induce Grayson Kubli to continue to represent her in May 2002, Giovanni

---

[7] Grayson Kubli omitted this information from its motion out of an arguably misplaced sense of professional obligation to avoid criticizing a former client and undermining her claim.

[8] *See Andrulis Corp. v. Giovanni*, Chancery No. 011788 (Alexandria Cir. Ct. Sept. 11, 2002) (Final Decree and Order for Judgment).

[9] *Grayson, Kubli & Hoffman, P.C. v. Giovanni*, Law No. 205661 (Fairfax County Cir. Ct. 2003).

made additional false representations concerning the same issues;

(iii)    that both the initial and follow-on misrepresentations were material;

(iv)    that Grayson Kubli relied on Giovanni's misrepresentations;

(v)    that Giovanni made the misrepresentations with the intention to mislead; and

(vi)    that as a result of its reliance on Giovanni's misrepresentations, Grayson Kubli suffered harm in the amount of its unpaid fees and expenses.[10]

On the basis of these and other findings, the arbitrator held in Grayson Kubli's favor on all counts, declaring a total arbitral award of $769,125.55, including compensatory and punitive damages, attorneys' fees, and pre-judgment interest.

Two weeks after the arbitral award issued, Giovanni filed a petition in bankruptcy in this jurisdiction. In response, Grayson Kubli filed an adversary action against Giovanni in the bankruptcy court, seeking a determination that its arbitral award was a non-dischargeable debt. As grounds for its claim, Grayson Kubli asserted, *inter alia*, § 523(a)(2) of the Bankruptcy Code, which bars the discharge of debts for services rendered to the extent that the services were obtained by certain types of fraud.[11] More specifically, Grayson Kubli alleged that Giovanni's debt to the firm was non-dischargeable because Giovanni had obtained the firm's legal services only by misrepresenting both her financial means and the merits of her defense against the

---

[10] *See Grayson, Kubli & Hoffman, P.C. v. Giovanni*, Case No. 161810002803 at 6-13 (Am. Arb. Ass'n Aug. 18, 2003) (Bernstein, Arb.) (Findings of Fact and Conclusions of Law).

[11] Grayson Kubli also asserted a claim under § 523(a)(6), which bars discharge for debts for willful and malicious injuries. *See* 11 U.S.C. § 523(a)(6) (2005). The bankruptcy court dismissed this claim, however, *see In re Giovanni*, Case No. 03-14006-SSM (Bankr. E.D. Va. Nov. 26, 2004) (Judgment), and Grayson Kubli did not appeal the dismissal. Accordingly, § 523(a)(6) is irrelevant here.

Andrulis lawsuit.  After reducing its arbitral award to judgment in state court,[12] Grayson Kubli

moved for summary judgment on its non-dischargeability claim in the bankruptcy court,

contending that the arbitrator's findings with respect to Giovanni's fraud should be given

collateral estoppel effect.

The bankruptcy court granted in part and denied in part Grayson Kubli's summary

judgment motion.[13]  With respect to the arbitrator's findings, the bankruptcy court held that

because the arbitral award had been reduced to judgment, Giovanni was collaterally estopped

from contesting a variety of relevant issues, including:

> that the debtor made the representations in question; that the representations were
> false; that the debtor knew they were false; that the representations were material;
> that Grayson [Kubli] relied on them; and that Grayson [Kubli] was damaged in
> the amount found.

*In re Giovanni*, Case No. 03-14006-SSM at 8 (Bankr. E.D. Va. Sept. 10, 2004) (Memorandum

Opinion) [hereinafter *In re Giovanni*].  After analyzing the prerequisites for non-dischargeability

under § 523(a)(2), however, the bankruptcy court concluded that these findings did not establish

all of the elements necessary for Grayson Kubli to prevail on its § 523(a)(2) claims.  *Id.*  As the

bankruptcy court correctly noted, § 523(a)(2) requires more than mere reliance-in-fact on a

debtor's material false statement: where the statement is *un*related to the debtor's financial

condition, § 523(a)(2)(A) requires that the creditor seeking non-dischargeability prove that his

reliance was *justifiable*, *Field v. Mans*, 516 U.S. 59, 61 (1995); where the statement is *related* to

the debtor's financial condition, § 523(a)(2)(B) requires that the creditor's reliance meet the

---

[12] *Grayson, Kubli & Hoffman, P.C. v. Giovanni*, Law No. 205661 (Fairfax County Cir.
Ct. May 28, 2004) (Amended Final Order).

[13] *In re Giovanni*, Case No. 03-14006-SSM (Bankr. E.D. Va. Sept. 10, 2004) (Order).

higher standard of *reasonable* reliance, and, additionally, that the statement have been *in writing*.  The bankruptcy court held that the arbitrator had not determined (i) whether Giovanni's misrepresentations concerning her financial condition had been made orally or in writing, or (ii) the degree of Grayson Kubli's reliance Giovanni's misrepresentations,[14] and thus undertook its own examination of the factual record.

With respect to the first issue, the bankruptcy court observed that it appeared from the record that Giovanni's initial misrepresentations concerning her finances, *e.g.*, her claim that she earned $300,000 annually, had been made orally rather than in writing.  *In re Giovanni* at 9.  Accordingly, the bankruptcy court concluded that such statements provided no basis for a determination of non-dischargeability under § 523(a)(2)(B).  *Id.*  This conclusion did not end the dischargeability analysis, however, as the bankruptcy court subsequently observed that "the arbitrator's award of damages for fraud" was "independently supported by the debtor's false statements respecting the merits of her case."  *Id.*  Because such non-financial false statements could support a non-dischargeability claim under § 523(a)(2)(A) even if made orally, the bankruptcy court concluded that "putting to one side the question of the degree of reliance, the arbitrator's award on the count of fraud ... is sufficient to support a determination of

---

[14] *In re Giovanni* at 8.  The bankruptcy court's finding that the level of Grayson Kubli's reliance was not determined in arbitration is questionable.  Under Virginia law — which the arbitrator applied — fraud requires proof of reasonable reliance.  *See Horner v. Ahern*, 153 S.E.2d 216 (Va. 1967)).  Thus, the arbitrator's conclusion that Grayson Kubli had proven its fraud claims constitutes an implicit determination that Grayson Kubli reasonably relied on Giovanni's misrepresentations.  Although well aware of *Horner*, the bankruptcy court concluded that no such determination was made because the arbitrator made no express finding regarding the level of reliance.  *See In re Giovanni* at 11 n.2.  Neither party has raised the issue of whether the bankruptcy court was correct in this regard, however, and thus this point is not addressed here.

nondischargeability." *Id.* at 10.  With respect to the degree-of-reliance issue, the bankruptcy court simply noted that "while the arbitrator's award establishes all the other elements for nondischargeability under § 523(a)(2), it does not establish that Grayson [Kubli] justifiably relied on the debtor's false statements concerning the facts of the [Andrulis] case ... ." *Id.* at 11. That issue, the bankruptcy court held, remained for trial.[15]

A trial on the issue of Grayson Kubli's reliance was held on November 23, 2004.  At the conclusion of the trial, the bankruptcy court issued an oral opinion, finding that based on the facts previously recited, Grayson Kubli's reliance on Giovanni's non-financial false statements was justifiable.[16]  Accordingly, the bankruptcy court entered judgment for Grayson Kubli, holding that the law firm's confirmed arbitral award was non-dischargeable pursuant to § 523(a)(2)(A).[17]  This appeal followed.

## II.

Under the Bankruptcy Code, a proceeding to determine the dischargeability of a particular debt is a core bankruptcy matter.  28 U.S.C. § 157(a)(2)(I) (2005).  Decisions of a

---

[15] *See In re Giovanni* at 11.  The bankruptcy court held that trial was also necessary on the issue whether Grayson Kubli had reasonably relied on Giovanni's May 2002 false representation concerning her proposed payment plan.  The bankruptcy court reasoned that because the plan had been conveyed to Grayson Kubli via e-mail, it was — unlike Giovanni's initial lies about her finances — a "written" financial misrepresentation for § 523(a)(2)(B) purposes. *Id.* at 10.  At trial, however, the bankruptcy court found that Grayson Kubli's reliance on the plan was not reasonable, and accordingly held that the plan provided no basis for a determination of non-dischargeability. *In re Giovanni*, Case No. 03-14006-SSM (Bankr. E.D. Va. Nov. 23, 2004) (Trial Transcript).  Grayson Kubli did not appeal this finding, and thus the issue is not relevant here.

[16] *In re Giovanni*, Case No. 03-14006-SSM (Bankr. E.D. Va. Nov. 23, 2004) (Trial Transcript).

[17] *In re Giovanni*, Case No. 03-14006-SSM (Bankr. E.D. Va. Nov. 26, 2004) (Order).

bankruptcy judge on core bankruptcy matters are reviewed under a clear error standard for findings of fact and a *de novo* standard for conclusions of law.  *See* FED. R. BANK. P. 8013; *Canal Corp. v. Finnman*, 960 F.2d 396, 399 (4th Cir. 1992); *C.F. Trust, Inc. v. Tyler* (*In re Peterson*), 318 B.R. 795, 802 (E.D. Va. 2004).

   As noted at the outset, this appeal presents two issues: (i) whether the bankruptcy court properly determined that Grayson Kubli's reliance on Giovanni's non-financial false statements was justifiable; and (ii) whether the bankruptcy court properly determined that the entirety of Giovanni's debt is non-dischargeable.  The standard of review applicable to the first issue is well-settled: a bankruptcy court's finding of justifiable reliance is a finding of fact subject to review under a clearly erroneous standard.  *See Boyuka v. White*, 2005 U.S. App. LEXIS 7374 at *23 (4th Cir. 2005); *In re Bonnanzio*, 91 F.3d 296, 304 (2d Cir. 1996) (reasonable reliance is question of fact); *In re Woolum*, 979 F.2d 71, 75 (6th Cir. 1992) (same).  Accordingly, clear error review applies to the first issue presented.

   The standard of review applicable to the second issue, however, requires further analysis.  Giovanni's second point of error derives from the plain language of § 523(a)(2), which states that a debt is non-dischargeable "*to the extent*" that it is attributable to certain types of fraud.  Citing this phrase, Giovanni contends that because she made a variety of debt-causing false statements to Grayson Kubli, only some of which give rise to non-dischargeability under § 523(a)(2)(A), the bankruptcy court was required to make — but did not make — specific findings allocating her debt into dischargeable and non-dischargeable portions based on the relative debt-causing effect of her various misrepresentations.  Distilled to its essence, therefore, this point of error attacks the bankruptcy court's findings — or lack thereof — with respect to

-10-

the proximate cause of Giovanni's debt, and thus presents a mixed question of law and fact that is also subject to clear error review. *See RCSH Operations, L.L.C. v. Third Crystal Park Assoc.*, 115 Fed. Appx. 621, 632 (4th Cir. 2004); *see also Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 840-41 (1996); *Cohen v. Boxberger*, 544 F.2d 701, 704 (4th Cir. 1976).

## III.

It is well-settled that the justifiable-reliance standard presents a significantly lower hurdle to the fraud plaintiff than does the standard of reasonableness. *See Field v. Mans*, 516 U.S. 59, 70-71 (1995). Unlike reasonableness, "[j]ustification" is not determined by applying an objective and universal standard to the plaintiff's conduct, but rather by evaluating "the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case ... ." *Id.* at 71 (quoting RESTATEMENT (SECOND) OF TORTS § 545A (1976)). Accordingly, reliance can be justifiable even where it is "unreasonable and negligent," and "strains the credulity of a reasonable person." *In re Lett*, 238 B.R. 167, 187 (Bankr. W.D. Mo. 1999). As the Restatement explains, the justifiable-reliance standard imposes on the would-be fraud plaintiff only the requirement that he not "blindly rel[y] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *See* RESTATEMENT (SECOND) OF TORTS § 541 cmt. a (1976) (cited in *Field*, 516 U.S. at 71). Put differently, only the disregard of "red flags" falls below the justifiable-reliance standard. *See In re Anastas*, 94 F.3d 1280, 1286 (9th Cir. 1996).

Here, the record reflects that Grayson Kubli encountered one such "red flag" at the outset of its representation of Giovanni when it noticed that Andrulis' referral-fee checks had been deposited in Giovanni's bank account. Although failure to investigate this discovery might have

dragged Grayson Kubli's reliance on Giovanni's misrepresentations below the level of justification, it is clear from the record that Grayson Kubli did not ignore or close its eyes to the news, but rather was prompted to seek verification of Giovanni's explanation from a reliable third party.  Only after obtaining that verification from a local attorney — who, indeed, executed an affidavit attesting to Giovanni's version of events — did Grayson Kubli come to trust in the veracity of Giovanni's claims.  Because the law firm took these steps to verify an arguably suspicious story, its reliance on Giovanni's misrepresentations concerning the merits of her defense was plainly justifiable.  Thus, the bankruptcy court's finding of justifiable reliance is not clearly erroneous.

Instead of challenging this conclusion directly, Giovanni seeks to sidestep it, contending that Grayson Kubli "relied ... principally on the fruits of its own investigation" rather than on Giovanni's misrepresentations.  *See* Appellant's Br. at 14.  In short, this argument is not addressed to the bankruptcy court's finding that Grayson Kubli's reliance was justifiable, but rather to the arbitrator's finding that Grayson Kubli actually relied on Giovanni's false statements.  As the bankruptcy court correctly concluded, Giovanni is collaterally estopped from contesting this issue, and even if she were not, the issue was not preserved for appeal.  Accordingly, Giovanni's first point of error fails.

## IV.

In the Fourth Circuit and elsewhere, a creditor seeking a determination that a particular debt is non-dischargeable pursuant to § 523(a)(2)(A) must establish, *inter alia*, that the debtor's non-financial misrepresentation was the proximate cause of the debt in issue.  *See*, *e.g.*, *In re White*, 2005 U.S. App. LEXIS 7374 at *9 (4th Cir. April 28, 2005); *United States v. Spicer*, 57

F.3d 1152, 1157 (D.C. Cir. 1995); *In re Britton*, 950 F.2d 602, 604 (9th Cir. 1991); *In re Hale*, 274 B.R. 220, 223-23 (Bankr. E.D. Va. 2001); *In re Sestito*, 136 B.R. 602 (Bankr. D. Mass. 1992); *In re Larson*, 136 B.R. 540 (Bankr. D. N.D. 1992); *In re Gadsden*, 128 B.R. 45 (Bankr. E.D.N.Y. 1991); *but cf. In re Gerlach*, 897 F.2d 1048, 1051 (10th Cir. 1990) (creditor need not prove damages caused by fraud in order to establish non-dischargeability).  As previously noted, the essence of Giovanni's argument on this issue is that her non-financial misrepresentations cannot be the proximate cause of *all* of her debt to Grayson Kubli because the law firm also relied to its detriment on her financial misrepresentations.  In support of this argument, Giovanni notes that after May 2002, Grayson Kubli was aware of the falsity of her non-financial misrepresentations.  Accordingly, Giovanni contends that those misrepresentations cannot have given rise to later-accruing debt because Grayson Kubli could not have continued to rely on them.

As an initial matter, it is worth noting that the bankruptcy court's finding with respect to proximate cause occurred at the summary judgment stage, when the bankruptcy court observed that "the arbitrator's award of damages for fraud" was "independently supported by the debtor's false statements respecting the merits of her case."  No appeal was taken from the bankruptcy court's summary judgment order, and accordingly the question of proximate cause is not at issue.  More importantly, however, Giovanni's argument that her non-financial fraud did not give rise to the entirety of her debt is belied by the fact that Giovanni went to some lengths to ensure that Grayson Kubli would not be able to terminate its representation of her even after those frauds were discovered.  It ignores, for example, that Giovanni generated a new false explanation — one with some plausibility — for her receipt of the referral fees in question, and

then misrepresented to the law firm that she would not oppose the motion to withdraw.  These

additional frauds had the effect of trapping Grayson Kubli in the Andrulis lawsuit even as its

unpaid bills continued to accumulate.  Under these circumstances, it cannot be said that the

bankruptcy court clearly erred when it held that the entirety of Giovanni's debt was attributable

to her non-financial fraudulent statements.

## V.

For the foregoing reasons, the judgment of the bankruptcy court must be affirmed.

An appropriate Order will issue.


Alexandria, Virginia
May 17, 2005

_____
T. S. Ellis, III
United States District Judge